JUAN HERNÁNDEZ ET AL., Plaintiffs and Appellees, *v*. BENJAMÍN OTERO, Defendant and Appellant.

No. 4337.  Argued June 27, 1929.—Decided April 30, 1930.

*Adrián Agosto,* for appellant.  *Celestino Benítez,* for appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Juan Hernández and José A. Hernández contracted to build a house for Benjamín Otero for $5,200 and, alleging the performance of the contract on their part, the execution of extra work for $250, and the receipt of only $4,900, they brought this action to recover the unpaid balance or $550.

In his answer Benjamín Otero admitted the execution of the contract and the payment of only $4,900, but he averred that his reason for not paying the remaining $550 was the breach of the contract on the part of the plaintiffs in building the base two and one-half feet high instead of three feet; in not using first-class lumber as specified, leaving the wood-floors without the required strength; and in putting in place unevenly the tiles in the tile-floors, for which reason he received the house under protest, the defendants then agreeing to correct the defects and he to pay them $550 after they did so; and that the plaintiffs have failed to correct such defects.

The case went to trial and, after weighing the evidence introduced, the district court gave judgment for the plaintiffs. In the opinion filed in support of that judgment, the district judge says, in part, as follows:

"The plaintiffs, Juan and José A. Hernández, as well as the witnesses, Tomás Silva and Juan Salcedo, have testified in regard to the work done in the building, especially as to the extra work executed by order of Mr. Cándido Fernández, in his capacity as attorney-in-fact and representative of defendant Benjamín Otero.

"The said Cándido Fernández himself admits in his testimony that they had agreed to incorporate certain additional clauses in the original contract.

"The plaintiffs and their witnesses, Tomás Silva and Juan Salcedo, testified that they were in the finished building on January 15, 1925; that on that date and in their presence the building was delivered to Cándido Fernández, as attorney-in-fact of the defendant, and that the said Fernández received the work as satisfactory.

"The plaintiffs testified that on January 15, 1925, when delivering the work to Cándido Fernández, the latter handed them a certain sum of money and as he still owed them $550 he told them to wait for the latter sum 'until day after to-morrow,' because at that moment he did not have it with him; that he made no objection to the work, which was received as satisfactory by him; and that up to the present time the said sum of $550 has not been paid.

"The plaintiffs further testified that on January 15, 1925, while they were in the premises as above stated, a receipt was signed to Cándido Fernández for the money received on that day, which

receipt was written in ink by hand on the back of the copy of the contract in the possession of Cándido Fernández, and that on the back of that same copy of the contract other receipts had been signed by the plaintiffs each time they received money from Fernández.

"All the witnesses for the plaintiffs—except Marshal Prida—testified that there was no typewriter in the building under construction.

"The defendant, through his attorney-in-fact Cándido Fernández, has introduced in evidence a receipt (Exhibit No. 1 of the defendant), which literally copied reads as follows:

" 'Received on delivery of the house the sum of $4,900 and, as Mr. Fernández refuses to receive the same claiming that it does not meet the requirements of the contract, we leave in his possession the sum of $550 as security until said house complies with the said requirements.—1/15/1925.—José A. Hernández.'

"The above receipt bears the signature 'José A. Hernández'; but plaintiff José A. Hernández has flatly denied that it is his signature.

"The defendant seems to base his defense entirely on the said receipt and accordingly he introduced handwriting expert Pedro Carlos Timothée to compare said signature with the undisputed signature of José A. Hernández, which appears in the verification of the amended complaint dated October 24, 1925, and that expert concluded that 'both signatures have the characteristics of having been written by the same person.'

"Said expert Timothée was examined and cross-examined extensively by the parties. On cross-examination, he stated: 'That he thinks that the signature on the receipt has been written with an indelible pencil.'

"At the trial the judge of the district court put to the said expert the following questions, as appears from the record:

" 'Q.—Let the witness state whether it is possible to imitate a signature in such a manner as to render it difficult for an expert to detect the difference.

" 'A.—The imitation may be so well done as to present some difficulties; but I want to call the attention of the court to the fact that the more perfect an imitation, the easier it is to detect it, because the genuine signer affixes his signature in a natural way, while an imitator does not write but draws, and the more perfect the drawing the less spontaneous handwriting there is.

" 'Q.—But under the present conditions of the world, with its improvements, and in view of your experience as a handwriting expert,

have you ever come across a signature which, although found by you not to be genuine, was not, however, an artless copy of the authentic signature?

" 'A.—It might happen that a person, who has succeeded in imitating the signature of another after studying a few of his signatures, may write it with the same ease as the authentic signer and, owing to the perfection of the imitation, doubts might thereby arise when comparing the signatures. In such case one must examine the writings carefully in order to detect the imitation.

" 'Q.—And what preliminary work outside the court enables you to reach your present conclusion?

" 'A.—In my examination of these documents it was not necessary for me to use any instruments, because the characters in both signatures are so plain. . .

" 'Q.—Did you do it with your naked eye?

" 'A.—Yes, sir, and with the help of a magnifying glass.'

"It does not appear to us that the testimony of the handwriting expert transcribed above in so far as pertinent, furnishes any sound or reliable basis for determining whether or not the signature in the said receipt is that of José A. Hernández.

"Other facts have been established in this case which, in the view of this court, tend to show that the receipt in question is highly suspicious as regards its genuineness and execution. The following appears from a further examination of the evidence:

"The receipt is typewritten in capital letters throughout, except for a small 'r' in the abbreviation of the word 'mister' (señor) on the second line of the document and two ciphers represented by two small 'o's' on the fourth line. This is contrary to the usual style of writing, since capital letters are generally used to begin a paragraph and as initials forming part of proper nouns, etc.

"Witness Cándido Fernández testified under oath: 'That the signature which appears at the foot of the receipt was written in his presence by José A. Hernández, in blue ink and with a fountain pen.' Handwriting expert Timothée, on the contrary, states in his report: 'That he thinks that the signature has been written with an indelible pencil.' The simple inspection of the said signature shows that it has been really written with an indelible pencil.

"Cándido Fernández, the principal witness and attorney-in-fact of the defendant, testified that the receipt was written by the witness himself on an Oliver No. 9 typewriter, which he had purchased from

Sánchez Morales. Witnesses José A. Hernández and Juan Hernández testified that the receipt that was signed was handwritten, and not typewritten. But what is most suspicious as regards that document is the following, which appears from the evidence:

"The back of the paper on which is written the receipt contains in typewritten characters the last line of the 10th clause of the contract; also all of the 11th and 12th clauses and three lines of the 13th clause of the agreement.

"The said Cándido Fernández, when testifying at the trial, produced the entire first page of a copy of the contract and, in addition, some fragments with which he tried to reconstruct in court the second page of the said contract, which consists of two typewritten pages. For that purpose he placed first, and as heading the page, the portion thereof on the back of which was written the receipt. Right underneath he placed another fragment of paper containing clauses 14, 15 and 16 of the contract, but in this fragment there is a large hole which corresponds to the place where the signature of José A. Hernández ought to be.

From the document so reconstructed it appears at first glance that what was typewritten on the back of the receipt as containing clauses 11, 12 and 13 of the contract was done with a carbon paper different from that used to type the rest of the typewritten matter appearing on the second fragment, which comprises from clause 14 to the last clause of the agreement. This at first sight produces the impression that the fragment containing the receipt was not an integral part of the same sheet of paper which contained clauses 14, 15, 16 and 17 of the said agreement.

"It also appears that the width of the paper on which the receipt is written is smaller than the width of the other fragments, which have been used in the effort to reconstruct the contract. This is manifest at first view and, therefore, the court finds that the frag ment of paper on which the receipt has been written does not belong to the same copy of the contract containing the other three fragments produced by witness Fernández for the purpose of reconstructing the second page of the copy of the agreement.

"The court has gone into the above details in connection with the statement of the case herein, because there is a conflict between the testimony of plaintiffs Juan Hernández and José A. Hernández and that of the leading witness for the defendant, Cándido Fernández, and Act No. 25, approved June 12, 1925, makes it imperative for

the court, where the evidence is conflicting, to state clearly its reasons for believing one witness as against another who testified to the contrary. In the present case the court resolves the conflict in the evidence by declaring that it gives no credence to the testimony of the witness for the defendant, Cándido Fernández, in that part thereof which is in conflict with the testimony of the witnesses for the plaintiffs and especially with the testimony of the plaintiffs themselves; and, on the other hand, it declares that it gives full credence to the testimony of the said plaintiffs. The court holds that the preponderance of the evidence favors the plaintiffs (section 162 of the Law of Evidence); and it expressly declares that each and every allegation of the amended complaint has been satisfactorily proved."

Thereupon the defendant appealed, and his only assignment of error is that the court abused its discretion in resolving the conflict in the evidence against him.

We have given prolonged consideration to this case and have occasionally entertained some doubts as to how we should decide it. From a study of the evidence and the arguments set forth in the brief of the appellant, it has seemed to us at times that the truth lies in the typewritten receipt reputedly signed by one of the plaintiffs on the back of the building contract. However, the contrary view is so firmly and convincingly expressed by the trial judge in his statement of the case and opinion, and our own previous decisions on the legal question involved are so clear and rest on such solid grounds, that we have time and again been stopped by such a view, as if by an unsurmountable barrier.

That being so, we are finally compelled to affirm the judgment, since our doubts, although still subsisting, are not of such a character as to justify us in concluding that the trial judge abused his discretion in resolving the conflict in the evidence against the defendant.

The judgment appealed from must be affirmed.